G. M. WINFREE, ADMINISTRATOR OF W. C. WINFREE, DECEASED, v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 22 October, 1930.)

1. **Railroads D c—Evidence of railroad's negligence in causing death to person on tracks held insufficient to be submitted to the jury.**

Where, in an action against a railroad company for damages for the negligent killing of the plaintiff's intestate, the evidence tends to show that the intestate was employed as a watchman at a public crossing where the defendant had several tracks, that immediately after stopping work at night the plaintiff's intestate, instead of leaving by a street, assumed to walk up the defendant's tracks, and was killed by defendant's northbound passenger train running on the track for southbound trains, that the change in the use of the tracks was made necessary by condition of the track ahead, and that the train which struck the intestate had its headlight lit and gave all the usual warnings and signals, and that there were several places which the intestate could have reached and been in safety, is *held*, insufficient to establish the alleged negligence of the defendant in running its northbound train on its southbound track without notice to the intestate, as a proximate cause of the injury, and defendant's motion as of nonsuit was properly granted, there being no evidence that the defendant was under duty to warn the intestate of the change, and there being evidence that the intestate knew or should have known thereof.

**2. Negligence B b—Where evidence fails to establish plaintiff's negligence as proximate cause of injury, nonsuit is proper.**

In an action to recover damages for an alleged negligent injury, the plaintiff must establish the alleged negligence of the defendant as the proximate cause of the injury, and where the evidence leads only to conjecture and speculation the defendant's motion as of nonsuit is properly allowed.

**3. Master and Servant E b—Under Federal Employers' Liability Act an employee assumes ordinary risks and obvious negligence of defendant.**

Under the Federal Employers' Liability Act an employee not only assumes the ordinary risks of his employment, but also such risks as are due to the defendant's negligence when they are obviously known and appreciated by him.

**4. Same—Evidence of employee's assumption of risk held sufficient to sustain defendant's motion as of nonsuit.**

Where in an action under the Federal Employers' Liability Act there is evidence that the plaintiff's intestate chose to walk along the defendant's tracks, when he might have used a public street, that he was aware of the approach of defendant's train, that there were several places of safety along the track, and that he must have realized the danger, he is deemed to have assumed the risk of injury, and his administrator may not recover against the railroad on the ground that the intestate was struck by a northbound train on the southbound track, it not being shown that the defendant should have warned the intestate of the change in the schedule made necessary by repairs, and there being further evidence that the intestate knew or should have known of the change.

APPEAL by plaintiff from *Daniels, J.*, at March Term, 1930, of WAKE. Affirmed.

The plaintiff brought suit to recover damages for the death of his intestate alleged to have been caused by the negligence of the defendant. At the close of the plaintiff's evidence the action was dismissed as in case of nonsuit and the plaintiff appealed. C. S., 567.

*Clyde A. Douglass and Thos. H. Ruffin for appellant.*
*Murray Allen for appellee.*

ADAMS, J. The death of the plaintiff's intestate occurred a few minutes after ten o'clock at night on 15 August, 1929. He was employed by the defendant as extra watchman at Johnson Street crossing in the city of Raleigh and was charged with the duty of preventing persons and vehicles from going upon the defendant's tracks when trains were approaching. His hours of service were between two in the afternoon and ten at night. He lived on Glenwood Avenue and at the time of his death was on his way home.

At and near the place of the accident the defendant has three parallel tracks: on the east is the northbound track; west of it, the southbound;

and west of the southbound track is another known as the cinder track. They run north and south and are intersected by several streets in the vicinity, which extend east and west.

A clerk in the defendant's storeroom at Johnson Street saw the deceased leave his station on the north side of this street and walk toward the south on the railroad yard. In a few minutes the defendant's northbound train ran in on the southbound track; "the bell rang, the whistle blew, and the train stopped in about two and a half car lengths." The body of the deceased was found between the southbound track and the cinder track, 250 feet north of the North Street crossing and 250 or 300 feet from the crossing at Johnson Street.

For several years the defendant's employees had been accustomed to use the railway tracks and the space between the tracks in going to and from their work. Between the nearest rails of the two tracks the distance is about six feet and between the ends of the cross-ties about four. Several witnesses testified that a person can walk between the tracks in no danger of being struck by a passing train; but there is evidence that it would be impossible for one to stand between the tracks without being struck if a train passed by. It was testified that the deceased could have reached his home by going on Johnson Street without walking on the roadbed; also that Johnson Street is not in good condition.

The northbound train customarily used the east or northbound track, but on this occasion it ran on the west or southbound track because the construction of an underpass at Peace Street made its use necessary. A person standing on either track near the place of the accident and facing the glare of the headlight on an engine coming from the south could not definitely determine the track the train was on. But "there was room to get entirely off the tracks on the south side."

It was in evidence that the speed of the train was 35 or 40 miles an hour; that a signal was given at Jones Street four or five blocks away; that the noise was heard at this distance; that the train was known to be coming when 1,680 feet distant; and that the bell was ringing when the train ran into the yard. The headlight was burning. A witness testified that from the place where the body of the deceased was found one could see the headlight 500 feet away, and that there were several contiguous places of safety.

Actionable negligence involves three essential elements: the existence of a duty on the part of the defendant to protect the plaintiff from injury; failure of the defendant to perform this duty; and injury to the plaintiff proximately resulting from such failure.

Granting that there is evidence of negligence in the operation of the train in breach of the city ordinance, or in disregard of the duty to give the usual signals, or at an excessive rate of speed, we do not discover

any sufficient evidence that any of these alleged acts was the proximate cause of the intestate's injury and death. *Bowers v. R. R.,* 144 N. C., 684; *Clark v. Wright,* 167 N. C., 646.

It is contended, however, that the defendant was negligent in that, without notifying the deceased, it operated the northbound train on the southbound track contrary to an established custom to run the northbound train on the northbound track. In considering this position we must keep two facts in mind: (1) the deceased was employed to keep watch at a crossing; (2) the use of the southbound track was necessary while the underpass at Peace Street was under process of construction. It does not appear how long the northbound train had been using the southbound track; but it does appear that it was the duty of the deceased to watch the Johnson Street crossing, to notify pedestrians, and to hear approaching trains. There is some evidence that it was his duty to know what track the train was on. No rule of the defendant is shown that watchmen must be notified when a train is transferred from one track to another and no authority is cited by the appellant requiring it as a matter of law.

The appellant cites *New York Cont. R. Co. v. Marcone,* 281 U. S., 345, 74 Law Ed., 419; but in that case there was evidence of a system or custom in the roundhouse of giving warning to the men employed about the engines when they were to be removed from the roundhouse, by posting the time of removal on a blackboard located on the inside of the outer wall of the roundhouse. The warning was required for the specific protection of the deceased and other employees whose place of work was such that any movement of the engine without warning was dangerous to life and limb. In the conflict of evidence it was held that the inference to be drawn was for the jury. That case is not decisive in the present appeal.

The evidence does not disclose the proximate cause of the plaintiff's death, and an effort to determine the exact circumstances under which it occurred leads us into the field of conjecture or speculation. *Austin v. R. R.,* 197 N. C., 319; *Elliott v. R. R.,* 150 U. S., 245, 37 Law Ed., 1068; *Toledo, St. L. & W. R. Co. v. Allen,* 276 U. S., 165, 72 Law Ed., 513.

If, as the appellant contends, the defendant was engaged in and the deceased was employed in interstate commerce, the next question is whether according to the evidence the intestate assumed the risk of his injury and death. Under the Federal Employers' Liability Act the employee assumes, not only the ordinary risks of his employment, but such as are extraordinary or due to the negligence of his employer when they are obvious or fully known and appreciated. *Delaware, L. & W. L. Co. v. Koske,* 279 U. S., 7, 73 Law Ed., 578. If the plaintiff's evi-

dence discloses assumption of risk the action should be dismissed. *Potter v. R. R.*, 197 N. C., 21; *Hinson v. R. R.*, 172 N. C., 646. There is no reason to doubt that the deceased knew the train was approaching or that he was in a place of danger, or that there were several ways of escape, or that walking on or near either track was, under the circumstances, a perilous undertaking, and under these conditions he must be deemed to have assumed the risk of injury. *Toledo, St. L. & W. R. Co. v. Allen, supra; C. & O. R. Co. v. Nixon*, 271 U. S., 218, 70 Law Ed., 914. If the deceased was in the service of the defendant at the time of his injury he was employed in interstate commerce; if his employment had ceased we are of opinion that upon all the evidence the recovery of damages should be denied. In any view of the case the judgment must be affirmed.

Judgment affirmed.