Albert Nardoni, Administrator of the Estate of Frank Nardoni, Deceased, Plaintiff in Error, v. Chicago & Eastern Illinois Railway Company, Defendant in Error.

Gen. No. 34,725.

Opinion filed April 15, 1931.

CHARLES C. SPENCER and BERTRAM H. MONTGOMERY, for plaintiff in error.

EDWARD W. RAWLINS, for defendant in error; KENNETH L. RICHMOND and LEE W. CARRIER, of counsel.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

Plaintiff, as administrator of the estate of Frank Nardoni, deceased, brought this action under the Federal Employers' Liability Act against the Chicago & Eastern Illinois Railway Co., defendant, to recover for the death of plaintiff's intestate. At the close of plaintiff's evidence the trial court instructed the jury to find the defendant not guilty and judgment was entered on that verdict.

There appears to be no material conflict as to the facts in the case. Plaintiff's intestate, Nardoni, at the time of his death was 55 years of age and was a track laborer for the defendant company, and part of his duties consisted in walking the tracks for the purpose of inspecting them. He was last seen alive on the morning of September 11, 1927, at 6:05 a. m. and, at the time, was engaged in his duties of inspection and was proceeding in a northerly direction along the southbound track of the defendant company, just west

of the depot at Chicago Heights. A passenger train arrived at the depot at 6:09 a. m. and departed at 6:10 a. m., in a northerly direction over the east or northbound track. At 6:18 a m., a freight train passed the depot, proceeding in a northerly direction over the west or southbound track. As this freight train proceeded on its way, a brakeman riding in the cab of the engine which was at the head of the freight train, was looking out of the side window of the cab of the engine and saw plaintiff's intestate lying on the right of way, about 8 feet west of the west rail of the southbound track upon which the freight train was running. No one on the freight train saw the deceased struck. Upon the brakeman calling attention to the body, the train was stopped and upon investigation plaintiff's intestate was found dead, with a gash or hole in the back of his head. The tools belonging to the deceased and used by him in and about his work were found several feet north of the body. The body itself was lying between 150 and 175 feet south of 12th Street in Chicago Heights, a street which intersects the lines of track of the defendant company, running in an easterly and westerly direction. There had been a fog in the morning on the day of the accident which had not entirely cleared at the time the deceased was last seen alive. There being no eyewitness to the accident itself, evidence was introduced on behalf of the plaintiff showing that he was a man of careful and prudent habits and the cause was tried on the theory that there were sufficient facts and circumstances from which negligence could be inferred on the part of the defendant.

Witnesses on behalf of the defendant testified that at the time of the accident the freight train in question was running at a speed of about 12 miles an hour; that the bell was ringing; that there was some fog around the ground, but that it was fairly clear.

Frank Judy, a witness on behalf of plaintiff, testified that he was the tower man for the defendant company and had worked for it for 20 years. He testified, on direct examination, that it was usual for freight trains to run north on the southbound track and on cross-examination stated that while it might not be the usual manner of operating the freight trains, still it was frequently done, probably at least two or three times a week; that these trains, when so operated, ran through Chicago Heights on this track to Thornton Junction, which was beyond the place where the accident occurred.

Defendant insists that there is no evidence that the defendant was negligent and that, moreover, plaintiff's intestate assumed the risk and that there can be no recovery.

It has been agreed in the record that the defendant company was, at the time of the accident, engaged in interstate commerce and that the tracks running through Chicago Heights were used at that time in interstate commerce shipments. Counsel for plaintiff insists that there was sufficient evidence for the trial court to have permitted the cause to go to the jury and that, on a motion to direct a verdict, the most favorable interpretation of the evidence should be in favor of the plaintiff. This evidence consisted of the fact that the plaintiff, at the time of the accident, was a man of careful habits; that he was walking north between the rails of a southbound track; that he had no warning as to any unusual movements of a train following him; that there was a curve in the track near where he was found; that there was a hazy or foggy condition of the weather; that the engineer on the train following him failed to give a warning; that his body was found near the track and his tools scattered.

Defendant insists that there is no evidence of negligence on the part of the defendant; that a jury, if

permitted to pass upon the question of fact, could only speculate as to the cause of death and, moreover, that deceased had assumed the risk and it was his duty to look out for trains and not for the trains to look out for him, provided the trainmen were not guilty of carelessly and wantonly running him down.

From the evidence it would appear that the movement of the freight train in a northerly direction over the southbound track was not an unusual manner of operation, but was so frequent that the plaintiff's intestate must have known of that fact. It is insisted that if the defendant had caused a whistle to be blown as required by statute at least 80 rods from 12th Street the deceased would have had warning of the approaching train. The testimony is uncontradicted that the bell was ringing at all times and, while it is insisted that defendant should have sounded a whistle before reaching 12th Street, nevertheless we cannot agree with this last contention. The statute with regard to trains approaching a street crossing only requires that the company shall ring a bell or sound a whistle. The proof is that the defendant was ringing the bell. *Butler v. Illinois Traction, Inc.,* 253 Ill. App. 135.

Moreover, the Supreme Court of the United States held in the case of *Chesapeake & Ohio Ry. Co. v. Mihas,* 280 U. S. 102, that such a statutory requirement as to warning is not intended for the benefit of employees, but only for the public. This last case mentioned was a certiorari from the Supreme Court of this State to review a judgment in favor of the plaintiff Mihas. This court held in that case that an employee had a right to rely upon a custom of the railroad to give a warning to the public and a certiorari was denied by the State Supreme Court. The Supreme Court of the United States, however, held otherwise, and expressly held that a statute giving a right of action to one injured by the neglect of the

railroad company to ring a locomotive bell before making a highway crossing, was designated exclusively for persons using the highway, citing *O'Donnell v. Providence and Worcester R. Co.*, 6 R. I. 211.

The case of *Chesapeake & Ohio Ry. Co. v. Nixon*, 271 U. S. 218, appears to be decisive of the question of assumed risk. In that case it appears that the deceased was an experienced section foreman on the defendant road and that one of his duties was to go over and examine the track and keep it in repair. At the time of the accident he was using a three-wheel velocipede which fitted the rails and which he had obtained from the superintendent of track. The question appeared to be whether the defendant company owed a duty to keep a lookout for the deceased, or whether, on the other hand, the deceased took the risk. At the time of the accident the deceased was not engaged in inspection, but the court held that he had assumed the risk and stated further in its opinion:

"If the accident had happened an hour later when the deceased was inspecting the track, we think that there is no doubt that he would be held to have assumed the risk, and to have understood, as he instructed his men, that he must rely upon his own watchfulness and keep out of the way. The railroad company was entitled to expect that self-protection from its employees. *Aerkfetz v. Humphreys*, 145 U. S. 418; *Boldt v. Pennsylvania R. Co.*, 245 U. S. 441, 445, 446. *Connelly v. Pennsylvania R. Co.*, 201 Fed. 54; *Davis v. Philadelphia & R. R. Co.*, 276 Fed. 187; *Pennsylvania R. Co. v. Wachter*, 60 Md. 395; 4 Elliott on Railroads, 3d. ed., § 1862. The duty of the railroad company toward this class of employees was not affected by that which it might owe to others."

As we have already stated, the testimony in the record is that it is not unusual to run the northbound freight trains on the southbound track. Even though

it were not done so frequently as appears to have been in this case, nevertheless, it was the duty of the deceased to have known that such might be the fact. *Winfree v. Seaboard Air Line Ry.* (N. C.), 155 S. E. 259.

At common law the rule was settled that the servant assumed the extraordinary risk incident to his employment. It has not been changed by the enactment of the Federal Employers' Liability Act in cases of this character. *Boldt v. Pennsylvania R. Co.*, 245 U. S. 441.

It has been the contention of plaintiff that the deceased must have been struck by the freight train. There is no evidence in the record that anyone saw him struck, although the engineer and the brakeman sitting in the cab were in a position to have seen the accident if it had occurred by reason of the freight train striking deceased. While it might appear that the deceased was, in fact, struck by the freight train, it must necessarily be a matter of speculation. There appears to be no facts showing negligence on the part of the defendant. The only fact of negligence that might be urged would be failure to warn the deceased that the freight was proceeding over the northbound track, but, as we have stated, this was not an unusual proceeding and there was no obligation to blow a whistle or ring a bell. *Atchison, T. & S. F. Ry. Co. v. Toops,* 281 U. S. 351.

For the reasons stated in this opinion, the judgment of the city court of Chicago Heights is affirmed.

*Judgment affirmed.*

HEBEL and FRIEND, JJ., concur.