IDA SUTTON v. D. J. HERRIN AND F. M. DICKERSON, AS INDIVIDUALS, AND AS PARTNERS TRADING AND DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF WILMINGTON NAVAL STORES COMPANY.

(Filed 13 April, 1932.)

1. **Trespass B d—Evidence held insufficient to show that defendant set out fire on lands without notice to adjoining landowners.**

   Where in an action to recover property damages alleged to have been caused by the act of the defendant or his employees or agents in intentionally setting out fire on his own land without giving notice to adjoining landowners as required by statute, N. C. Code of 1931, C. S., 4309, the evidence tends only to show that the fire started on defendant's land and spread to the plaintiff's land, but that the defendant had ordered his employees not to set out a fire on account of the dry conditions, and there is neither direct nor circumstantial evidence tending to show the fire had been started either by the defendant or his employees under his authority: *Held,* a judgment as of nonsuit was properly entered.

2. **Appeal and Error J e—Where evidence is insufficient to go to jury exclusion of corroborative evidence will not be held for error.**

   Where the evidence is not sufficient to resist a judgment as of nonsuit in an action, the exclusion of corroborative evidence if error, will not be held for reversible error.

**3. Trial D a—Evidence which raises mere suspicion or conjecture is insufficient to be submitted to the jury.**

On a motion as of nonsuit the evidence which makes for the plaintiff's cause of action will be considered in the light most favorable to the plaintiff and he is entitled to the benefit of every reasonable intendment thereon and every reasonable inference therefrom, but where the evidence raises only a mere suspicion or conjecture of the issue to be proved it is insufficient to be submitted to the jury. C. S., 567.

APPEAL by plaintiff from *Barnhill, J.,* at October Term, 1931, of NEW HANOVER. Affirmed.

The plaintiff is the owner of two tracts of land, one 5 acres and the other 75 acres, in New Hanover County, N. C. The defendants were partners doing business under the firm name and style of Wilmington Naval Stores Company, and their business consisted largely of cultivating turpentine trees, extracting from the pine trees on land raw turpentine, and distilling it, making spirits of turpentine, resin and perhaps other by-products.

Defendants acquired certain rights from Claude Gore (Gore Estates) to cultivate the turpentine upon the land and certain rights in the trees. The land adjoined, or was near by, the lands and premises of plaintiff. Plaintiff contends that before setting fire to the woodsland, on which the turpentine trees were growing, it was the duty of defendants to notify plaintiff and to use due care to watch and extinguish the fire and to notify adjoining landowners or their agents. "That the plaintiff is informed, believes, and therefore, alleges that the defendants either of themselves or through their agents, servants or employees, wilfully, deliberately, designedly and negligently on or about 24 February, A.D. 1930, without notifying the adjoining landowners, and in violation of the statutes of North Carolina, in such case made and provided, set fire to the woods and undergrowth, grass and trash on the lands they were cultivating turpentine upon, upon which they had acquired the right to cultivate turpentine from Claude Gore. . . . And negligently and carelessly allowed, permitted and caused the fire so put out on the lands they were cultivating turpentine upon to spread from said land and burn over the plaintiff's land above described, destroying lots of timber, small trees, woods mold, dog-tongue and the undergrowth thereon and caused the said fire to also burn down the fences on the plaintiff's premises, the plaintiff's dwelling-house thereon and all outhouses and buildings, grape arbors and fruit trees and all personal property which the plaintiff had upon said premises, including such furniture and other articles of personal property thereon, to the plaintiff's great damage and injury in actual value in the sum of $10,000." Plaintiff prays for $10,000 actual and $2,500 punitive damages.

The defendants, in their answer say that they did not, nor did anyone else by their authority, express or implied, "intentionally set fire to the woodlands, brush, grass, or other materials," which caused the fire of which plaintiff complains in this action. That neither the defendants nor their employees negligently set out the fire complained of, nor was it set out intentionally.

The following judgment was rendered by the court below: "Plaintiff having introduced her testimony, at the close thereof, upon motion of Rountree, Hackler & Rountree, counsel for the defendants: It is hereby ordered, decreed and adjudged: That the plaintiff be nonsuited, and the defendants recover from the plaintiff and the sureties upon her bond the cost of the action to be taxed by the clerk," etc.

The plaintiff excepted to the judgment as signed, assigned errors and appealed to the Supreme Court. The material ones and necessary facts will be considered in the opinion.

*Bryan & Campbell, Newman & Sinclair and Alton A. Lennon for plaintiff.*

*Rountree, Hackler & Rountree for defendants.*

CLARKSON, J. At the close of plaintiff's evidence the defendants made motion for judgment as in case of nonsuit. The court granted the motion and in this we can see no error.

C. S., 4309, N. C. Code, 1931 (Michie), in part is as follows: "If any person shall intentionally set fire to any grassland, brush land or woodland, except it be his own property, or in that case without first giving notice to all persons owning or in charge of land adjoining the land intended to be fired," etc.

This action is brought by the plaintiff to recover property damage, due to fire, which plaintiff alleges was negligently set out by the defendants, or their employees, or intentionally set out without giving notice to adjoining landowners, contrary to the statute, *supra,* and from which fire the plaintiff's property was damaged.

This statute is one of importance and has been frequently construed by this Court. The language is plain, but we think that the only material question involved in this action is: Was the evidence of the plaintiff of sufficient probative force to entitle plaintiff to have her case submitted to the jury on the issues arising on the pleadings? We think not.

The plaintiff is a widow. Her 8-room house and outhouses were destroyed by fire on 27 February, 1930. Also about 30 acres of her cleared land burned over. The Gore estate land, on which defendants were cultivating the turpentine trees adjoined her lands on the north and west. The fire started from the west. She testified, in part: "The

burning extended from my house out across on the north and on the west. I had a conversation with the defendant, Herrin. He said he did not put the fire out, that he had told his employees—that he had not had any fire out in three days, that he had told his employees on account of the dry weather not to put any fire in the woods. He said there was a hunter around through the woods. He said he had not put any fire out in three days, and he had warned his men not to do it on account of the dry weather. I never received any notice from Mr. Herrin or the Naval Stores Company they were going to put out a fire. . . . The house was not occupied at the time of the fire. It had been vacant from November, 1929."

J. E. Brantley, witness for plaintiff, testified, in part: "The fire that burned up Mrs. Sutton's house was set in the fork of the branch. (Mr. Hackler) Did you see it set? Answer: No, sir, but I saw where it was set. (The court) That is a conclusion. . . . Q. What did you find at that point? Answer: Well, I found horse tracks where a fellow got down and tied his horse and where he walked around there after the fire burned over. The tracks were in the fire-burned area. I went back to the most northerly part of the burning. I found the tracks in the most northerly part of the burning. There were turpentine trees there. Out on the ridge had been burned off clean for a week or ten days before, and where this fire was there were pine burs and stumps burning, and that was a mighty short distance from where I first saw the fire. I mean by a short distance not over one or two hundred yards. I trailed the horse further up the swamp and found the same performance in the meadow. I saw where it was burned out. It was a fresh fire. Saw a man's track and a horse's track. I had a conversation with Mr. Herrin immediately after the fire. He said he had no one in there but his woods rider. . . . The place where I saw the tracks was not a public road or path. From that point I traced the fire."

C. J. Hunt, testified, in part: "Court: Did you say he got off and fired up that place? Answer: I would not swear positively; all I know, a man tied his horse and walked over there. I did not see the horse, I saw the tracks, and at the place I saw the horse's tracks I saw man's tracks. I would not swear the man's tracks were large. They were large horse tracks, but I did not pay any attention to the other. Q. How far up in the woods above the marsh was the place where you say you saw the horse tracks? Answer: In a fresh burned place. I would term it a half mile from the center of the marsh. You could not go in there. That was mud. That was land that Mr. Herrin was cultivating turpentine on."

In 23 C. J., sec. 1795, at pp. 51-2, we find: "A verdict or finding must rest upon facts proved, or at least upon facts of which there is

substantial evidence, and cannot rest upon mere surmise, speculation, conjecture or suspicion. There must be legal evidence of every material fact necessary to support the verdict or finding, and such verdict or finding must be grounded on a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities." *S. v. Johnson,* 199 N. C., 429; *Denny v. Snow,* 199 N. C., at p. 774; *Shuford v. Scruggs,* 201 N. C., 685.

It is the settled rule and accepted position in this jurisdiction that, on a motion to nonsuit, the evidence which makes for the plaintiff's claim, and which tends to support his cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

There is no direct evidence that defendants or their agents or employees set out the fire on the Gore estate land, on which defendants were cultivating the turpentine trees. Nor do we think there was circumstantial evidence of any sufficient probative force. The plaintiff testified that the defendant Herrin "said there was a hunter around through the woods. He said he had not put any fire out in three days, and he had warned his men not to do it on account of the dry weather."

There was evidence as to the horse's tracks and man's tracks, but it is not clear whether they were made before or after the fire. Brantley testified: "I found horse tracks where a fellow got down and tied his horse and where he walked around there after the fire burned over. The tracks were in the fire-burned area."

Brantley testified that after the fire Herrin told him and Mrs. Sutton that "he had no one in there but his woods rider." Mrs. Sutton testified that Herrin told her that *"he had told his employees on account of the dry weather not to put any fire in the woods."*

In the present action there was no evidence sufficient to be submitted to a jury that defendants or their agents or employees were responsible for the origin of the fire. In fact, the evidence on the part of plaintiff was to the effect that defendant Herrin gave his employees positive instructions, on account of the dry weather, not to "put any fire in the woods."

The plaintiff contends that the other questions presented: (1) Was it competent for the plaintiff to prove that the defendant in cultivating its turpentine burned over the land so cultivated? (2) Was it competent to prove that defendants, over a period of years, from Christmas until spring, burned over the lands they were cultivating in turpentine?

Conceding, but not deciding, that the evidence objected to and for which error is assigned, was competent, at least as corroborative evidence, we think the probative force, with the other evidence of plaintiff, not sufficient to be submitted to a jury. These prior fires have no relation to the issue, who started this fire, or how was it started. It helps in no way to determine the responsibility for this particular fire.

In *McBee v. R. R.,* 171 N. C., at p. 112, this Court held that: "Mere proof of a foul right of way, without evidence that the fire was set out by a spark from a passing engine is insufficient to establish actionable negligence. It has been repeatedly held that in addition to the foul condition of the defendants' right of way, plaintiff *must prove that the fire was set out by the defendant in order to establish negligence."* (Italics ours.)

In *Wilson v. Lumber Co.,* 194 N. C., 374, it is held: In order to recover damages to plaintiff's land against the defendant for the negligent setting out fire by the employee in taking up its tramway operated by steam locomotives, there must be evidence that will raise more than a conjecture that the fire that caused the damage was in some way attributable to the defendant.

In the present case there is no evidence connecting the defendants with the origin of this fire, and in the absence of such evidence, they cannot be held responsible, under C. S., 4309, which makes persons intentionally setting out fires, liable for injuries to adjoining landowners in the absence of notice. There must be some connection shown between the defendants and the origin of the fire. In fact, if the fire had been set out by an employee of defendants, according to plaintiff's testimony it was done against defendant Herrin's positive instructions. The judgment of the court below is

Affirmed.